In the

# United States Court of Appeals

## For the Seventh Circuit

No. 14-3668

DR. ROBERT L. MEINDERS, D.C., LTD.,
individually and as the representa-
tive of a class of similarly-situated
persons,

*Plaintiff-Appellant*,

*v.*

UNITEDHEALTHCARE, INC., *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:14-cv-00548-DRH-DGW — **David R. Herndon**, *Judge.*

ARGUED MAY 20, 2015 — DECIDED SEPTEMBER 1, 2015

Before BAUER, FLAUM, and HAMILTON, *Circuit Judges.*

BAUER, *Circuit Judge.* Plaintiff-appellant, Dr. Robert L. Meinders, D.C., Ltd., commenced this action against UnitedHealthcare, Inc. and UnitedHealthcare of Illinois, Inc. (collectively, "United"), in Illinois state court. United removed the case to federal district court and filed a motion to dismiss

for improper venue under Federal Rule of Procedure 12(b)(3). The district court granted United's motion and dismissed the case. Because the district court premised its dismissal order on law and facts to which Meinders did not have a full and fair opportunity to respond, we reverse and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

In April 2014, Meinders filed a putative class action lawsuit against United in Illinois state court. The complaint alleged that, at some point in 2013, United sent him and a number of similarly-situated persons an unsolicited "junk fax" advertising United's services, which violated the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, *et seq.*, the Illinois Consumer Fraud and Deceptive Practices Act, 815 ILCS § 505/2, and amounted to common law conversion. United removed the case to the United States District Court for the Southern District of Illinois, on the basis of federal question jurisdiction under 28 U.S.C. § 1331. *See Mims v. Arrow Fin. Servs., Inc.*, _ U.S. _, 132 S. Ct. 740, 747 (2012) ("Congress did not deprive federal courts of federal-question jurisdiction over private TCPA suits.").

Once in federal court, United moved to dismiss the complaint for improper venue under Rule 12(b)(3) of the Federal Rules of Civil Procedure. United argued that Meinders had entered into a "Provider Agreement" with a United-owned entity, ACN Group, Inc., in 2006, which bound him to arbitrate his "junk fax" claims in Minnesota. The Provider Agreement provides in pertinent part:

> In the event of any dispute arising out of or relating to this Agreement, Provider [Meinders] and ACN Group shall first attempt in good faith to resolve the dispute mutually between them … . If Provider and ACN Group are unable to resolve a dispute by mutual agreement, then matters in controversy may be submitted, upon the motion of either party, to arbitration under the Commercial Rules of the American Arbitration Association (AAA). All such arbitration proceedings shall be administered by the AAA in Minnesota[.]

United claimed that the alleged "junk fax" it sent to Meinders related to the Provider Agreement, and thus fell within the purview of the arbitration clause, because it provided Meinders with information about new technology designed to assist United providers in recouping payments from patients. In support of its authority to enforce the agreement's arbitration provision, United stated in a footnote, "ACN Group, Inc. is a United-owned entity that coordinates the provision of healthcare services by, among other specialists, chiropractors."

Meinders contended, in response, that United was neither a party nor signatory to the Provider Agreement and, therefore, that it could not enforce the agreement's arbitration provision. Meinders noted that the Provider Agreement defined the "Parties" to the agreement as only Meinders and ACN Group, that the agreement did not mention United or suggest that any entity affiliated with ACN Group was also a party to the agreement, and that the arbitration clause was

expressly limited to disputes between Meinders and ACN Group. Meinders also pointed out that United failed to present evidentiary support for its claim of ownership of ACN Group and that, even if it had, corporate ownership does not itself confer a right upon the parent corporation to enforce an arbitration agreement where only the subsidiary is a party to the agreement.

United, "supris[ed]" that Meinders "raised and focused so heavily on the signatory issue," filed a reply brief. In its reply, United argued for the first time that it was entitled to enforce the Provider Agreement's arbitration clause based on a contractual theory of assumption. It also submitted new evidence—the declaration of Colleen Van Ham, the President and Chief Executive Officer of UnitedHealthcare of Illinois, Inc. In her declaration, Van Ham stated "[o]n December 22, 2003, ACN Group, Inc. ('ACN') became a wholly owned subsidiary of United Healthcare Services, Inc." She also stated, in support of United's assumption theory of enforcement, that "United has assumed important obligations under the Provider Agreement, such as [ACN's] obligation to coordinate and transmit payments to providers such as the plaintiff in this lawsuit."

Meinders moved to strike United's reply or, in the alternative, for leave to file a sur-reply addressing United's assumption theory and Van Ham's declaration. The district court denied Meinders' motion to strike, denied him leave to file a sur-reply, and struck his proffered sur-reply from the record. Without oral argument or a hearing, the district court then granted United's motion to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3). The court determined

that United, although not a signatory to the Provider Agreement, was entitled to enforce the agreement's arbitration clause on the ground that it "assumed important obligations under the Provider Agreement such as [ACN Group's] obligation to coordinate and transmit payments to providers such as Meinders." Meinders appealed.

## II. DISCUSSION

Meinders raises two challenges to the district court's decision—one is a procedural challenge, the other goes to the merits. We review *de novo* a district court's decision to dismiss a case for improper venue under Federal Rule of Civil Procedure 12(b)(3).[1] *See Jackson v. Payday Fin., LLC*, 764 F.3d 765, 773 (7th Cir. 2014). Insofar as the district court's decision is based upon factual findings, our review is guided by the clearly erroneous standard. *Fyrnetics (H.K.) Ltd. v. Quantum Grp., Inc.*, 293 F.3d 1023, 1027 (7th Cir. 2002).

The Federal Arbitration Act ("FAA") embodies a "liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 131 S. Ct. 1740, 1745 (2011) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)). The FAA operates to place arbitration agreements

---

[1] Because the arbitration clause in this case calls for arbitration outside the Southern District of Illinois, Rule 12(b)(3) is the appropriate vehicle for seeking dismissal of Meinders' suit. *Faulkenberg v. CB Tax Franchise Sys., LP*, 637 F.3d 801, 808 (7th Cir. 2011) ("[W]e have held that a Rule 12(b)(3) motion to dismiss for improper venue, rather than a motion to stay or compel arbitration, is the proper procedure to use when the arbitration clause requires arbitration outside the confines of the district court's district.").

on the same footing as other contracts to ensure that judiciaries enforce agreements to arbitrate. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991); *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 219 (1985). The relevant language of the FAA provides that an arbitration clause in a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

An agreement to arbitrate is treated like any other contract. *Gibson v. Neighborhood Health Clinics*, 121 F.3d 1126, 1130 (7th Cir. 1997). A party can be forced to arbitrate only those matters that he or she has agreed to submit to arbitration, *James v. McDonald's Corp.*, 417 F.3d 672, 677 (7th Cir. 2005), and "[i]f there is no contract there is to be no forced arbitration." *Gibson*, 121 F.3d at 1130. In determining whether a valid arbitration agreement exists between the parties, a federal court should look to the state law that ordinarily governs formation of contracts. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995); *James*, 417 F.3d at 677. In the present case, because the parties have agreed that Illinois law governs the question of whether the parties have entered into a contract, we look to the contract law of that state.

Meinders first contends on appeal that the district court denied him due process by entering judgment against him on factual and legal issues to which he did not have a full and fair opportunity to respond. After a review of the record, we agree.

As recounted above, United moved to dismiss Meinders' case for improper venue on the basis of an arbitration provision contained in an agreement to which United was neither a

party nor a signatory. The general rule, of course, is that an arbitration agreement binds only the parties to that agreement. *See EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002); *Ervin v. Nokia, Inc.*, 812 N.E.2d 534, 539 (Ill. App. Ct. 2004) ("'Under either federal or Illinois law, the right to compel arbitration stems from an underlying contract and generally may not be invoked by a nonsignatory to the contract.'" (quoting *Caligiuri v. First Colony Life Ins. Co.*, 742 N.E.2d 750, 755 (Ill. App. Ct. 2000))). This general rule is not without exception, however. We have recognized five contract-based doctrines through which a nonsignatory may be bound by an arbitration agreement entered into by others: "(1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." *Zurich Am. Ins. Co. v. Watts Indus.*, 417 F.3d 682, 687 (7th Cir. 2005) (citing *Fyrnetics (H.K.) Ltd.*, 293 F.3d at 1029).

In its opening motion, United premised its authority to enforce the Provider Agreement's arbitration provision on the ground that a party to the agreement, ACN Group, was a United-owned entity. *See Reese v. Forsythe Mergers Grp., Inc.*, 682 N.E.2d 208, 213 (Ill. App. Ct. 1997) ("[A] party seeking to enforce an agreement has the burden of establishing the existence of an agreement."). Meinders, in opposition, pointed out that United did not provide evidentiary support for its claim of ownership of ACN Group and that, even if it had, United's "ownership theory" did not itself confer a right upon United to enforce the agreement's arbitration provision. *See Zurich Am. Ins. Co.*, 417 F.3d at 688 ("A corporate relationship is generally not enough to bind a nonsignatory to an arbitration agreement."). United, then, in reply argued a new legal theory (assumption) and presented new evidence (Van Ham's

declaration) not raised in its original motion. The district court denied Meinders leave to respond and, without oral argument or a hearing, granted United's motion to dismiss, holding that "United is entitled to enforce the arbitration clause of the Provider Agreement" because it "assumed important obligations under the Provider Agreement such as [ACN Group's] obligation to coordinate and transmit payments to providers such as Meinders."

As the foregoing makes plain, the district court's dismissal order relied on a novel legal theory and new evidence submitted in reply, to which Meinders had no opportunity to respond. United attempts to defend the district court's handling of this case by asserting that the district court properly enforced Southern District of Illinois Local Rule 7.1(c). We disagree.

District courts are entitled to "considerable discretion in interpreting and applying their local rules," *Cuevas v. United States*, 317 F.3d 751, 752 (7th Cir. 2003), and we "will intrude on that discretion only where we are convinced that the district court made a mistake." *Bunn v. Khoury Enters., Inc.*, 753 F.3d 676, 681 (7th Cir. 2014) (internal quotation marks omitted). S.D. Ill. L.R. 7.1(c) states, in relevant part:

> Reply briefs are not favored and should be filed only in exceptional circumstances. The party filing the reply brief shall state the exceptional circumstances. Under no circumstances will surreply briefs be accepted.

The district court denied Meinders' motion to strike, holding that United's reply brief satisfied S.D. Ill. L.R. 7.1(c)'s

"exceptional circumstances" requirement since "[Meinders] memorandum in opposition raise[d] a new issue that was not addressed in [United's] motion and ignore[d] relevant law and facts relating to that issue." The court denied Meinders leave to file a sur-reply and struck his proffered sur-reply from the record pursuant to S.D. Ill. L.R. 7.1(c)'s strict prohibition on sur-reply briefs.

We are hard pressed to find the "new issue" that Meinders raised in his opposition brief on which the district court premised its "exceptional circumstances" determination. The only issues that Meinders' opposition brief raised were that United was not a signatory to the Provider Agreement and that United's ownership theory did not authorize it, as a non-signatory, to enforce the agreement's arbitration provision. At any rate, once the district court permitted United to file its reply brief, the court should have granted Meinders leave to file a sur-reply responding to United's novel assumption theory and Van Ham's declaration. Due process, we have cautioned, requires that a plaintiff be given an opportunity to respond to an argument or evidence raised as a basis to dismiss his or her claims. *See, e.g.*, *Smith v. Bray*, 681 F.3d 888, 903 (7th Cir. 2012) ("[D]istrict courts need to ensure that they do not base their decisions on issues raised in such a manner that the losing party never had a real chance to respond."); *English v. Cowell*, 10 F.3d 434, 437 (7th Cir. 1993) ("The opportunity to respond is deeply imbedded in our concept of fair play and substantial justice."). When strict adherence to local rules, such as S.D. Ill. L.R. 7.1(c)'s proscription on sur-reply briefs, threatens to deprive a litigant of the opportunity to respond, the local rules must give way to considerations of due process and

fundamental fairness. Accordingly, we hold that the district court deprived Meinders due process by entering judgment against him on law and facts to which he did not have a full and fair opportunity to respond.

As for the merits, both parties acknowledge that the contractual theory of assumption is one through which a nonsignatory to an arbitration agreement can enforce the agreement. The parties disagree, however, as to whether such an assumption occurred here. All we have in the record on this point is Van Ham's vague declaration stating, "United has assumed important obligations under the Provider Agreement, such as [ACN Group's] obligation to coordinate and transmit payments to providers such as the plaintiff in this lawsuit." Meinders raises a host of questions on appeal regarding Van Ham's declaration, many of which seek to determine whether United has indeed assumed ACN Group's obligations under the Provider Agreement and, if so, to what extent. He also seeks to submit testimony in response to Van Ham's declaration. Rather than decide the merits on the basis of Van Ham's bare-bones declaration, we think the more prudent course is to allow Meinders to contest Van Ham's declaration and delineate the metes and bounds of United's assumption. Accordingly, we remand to the district court where these factual issues may be more appropriately addressed in the first instance. On remand, the district court should permit discovery to the extent necessary to allow Meinders to submit a full response to Van Ham's declaration and United's assumption theory. Beyond that, we trust the district court to handle the proceedings as it sees fit.

### III. CONCLUSION

For the aforementioned reasons, we REVERSE the district court's dismissal order and REMAND the case for further proceedings consistent with this opinion.