In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 20-2832

DR. ROBERT L. MEINDERS, D.C., LTD.,
individually and as the
representative of a class of
similarly-situated persons,

*Plaintiff-Appellant*,

*v.*

UNITED HEALTHCARE SERVICES, INC.,
*et al.*

*Defendants-Appellees*.

_____

Appeal from the United States District Court for the
Southern District of Illinois.
No. 3:14-cv-00548-SMY — **Staci M. Yandle**, *Judge*.

_____

ARGUED APRIL 14, 2021 — DECIDED JULY 30, 2021

_____

Before MANION, ST. EVE, and KIRSCH, *Circuit Judges*.

KIRSCH, *Circuit Judge*. In 2013, Dr. Robert L. Meinders, D.C., Ltd., received a single fax advertisement from United Healthcare Services, Inc., a company with whom Meinders had done business for around seven years. Meinders believed

that, by sending the fax, United violated the Telephone Consumer Protection Act. Accordingly, Meinders sued, and after seven years of litigation, a threshold question remains: Should the litigation proceed in federal court, or should United be allowed to force Meinders to arbitrate? The answer to that question turns primarily on resolving whether United assumed the duties that a related company, American Chiropractic Network, Inc.,[1] promised to perform for Meinders in a provider agreement.

The district court held that United had assumed ACN's obligations and as a result could enforce an arbitration clause Meinders had agreed upon with ACN. We agree with the district court, and thus affirm.

I

A

Meinders[2] offers chiropractic services in St. Louis County, Illinois. United[3] provides or administers insurance plans nationwide. In 2006, Meinders decided to become a "participating provider" with United so that he could expand his customer base to include individuals within United's insurance network. To become a participating provider in United's network, Meinders entered into a provider agreement with ACN, a wholly owned subsidiary of UnitedHealthcare Services, Inc., in order to access United's network of patients.

---

[1] ACN is now OptumHealth Care Solutions, Inc.; because the parties continue to refer to the company as ACN, we do as well.

[2] We refer to Meinders directly instead of as a corporate entity.

[3] For simplicity, we refer to defendants United Healthcare Services, Inc., and UnitedHealthcare of Illinois, Inc., collectively as "United."

ACN provided administrative and network management services for chiropractors and had a preexisting master services agreement with United.

The provider agreement that Meinders entered into with ACN is the focus of this appeal. The basic terms of the agreement established that Meinders promised to provide chiropractic services to those with "participating plans" in exchange for ACN's promise to provide Meinders with administrative services. More specifically, ACN promised to provide "case management, quality management, reporting, [and] claims processing, including, but not limited to coordinating and transmitting billings and payments between Payors and Provider." R. 83-1 at 3. The "Provider" was Meinders, and a "Payor" was defined as an "[e]mployer, insurance carrier, ... or other entity, including, but not limited to ACN ..., which is responsible for direct payment of Covered Services in accordance with a Plan." *Id.* Additionally, ACN agreed to, among other things, "enter into arrangements with Plans to offer a network of Providers to provide Chiropractic Services to Members," and to furnish plan summaries for Meinders. *Id.*

Several other provisions governed the relationship of the parties to the agreement. First, the provider agreement allowed ACN, "in its sole discretion," to "assign its rights, duties or obligations" under the agreement "without approval" from Meinders. *Id.* at 11. ACN also promised to notify Meinders in writing if it assigned any duties or obligations before assignment. *Id.* Second, the provider agreement stated that if a dispute arose and neither ACN nor Meinders agreed to a mutual resolution, either party "may" submit the issue "to arbitration." *Id.* at 12. Both ACN and Meinders agreed that

any arbitration decision would be "final and binding as to each of them." *Id.*

Once Meinders signed the provider agreement, he submitted claims for United-insured patients directly to United, and United paid those claims. Those claims were submitted on United forms. Over several years, Meinders submitted upwards of 6,000 claims to United. And if an explanation-of-benefits form was requested, United provided it. United also provided a "Network Bulletin" monthly to Meinders that discussed changes in United policies. Additionally, Meinders confirmed a patient's eligibility either through United's website or through a United phone number. Meinders testified that the business relationship ran "through United," and United's corporate representative confirmed that it provided these services (and more) from "day one" of the provider agreement.

Five years before Meinders agreed to the provider agreement with ACN, ACN had entered into a master services agreement with United. At that time, ACN was not yet a wholly owned subsidiary of United, so the agreement allowed United to access the chiropractors with whom ACN had relationships. The master services agreement bound United to "use commercially reasonable efforts to comply with obligations set forth in" ACN's "Participating Provider agreements," including a variety of provider-related services R. 83-7 at 4. In exchange, ACN promised to perform various tasks related to developing the network of providers and to give United access to those providers. Meinders was not party to this agreement, and it did not contemplate third-party beneficiaries.

B

In 2013, United sent the fax that forms the basis for Meinders's TCPA claim. Since then, the litigation has traveled a long and winding journey, much of which we discussed in not one, but two prior appeals. See *Dr. Robert L. Meinders, D.C., Ltd. v. UnitedHealthcare, Inc.*, 800 F.3d 853, 855–56 (7th Cir. 2015) ("*Meinders I*"); *Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare, Inc.*, No. 16-2994, slip op. at 1–2 (7th Cir. June 1, 2020) ("*Meinders II*"). So we limit our discussion here to the procedural history relevant to this appeal.

United initially moved to dismiss Meinders's TCPA claim for improper venue under Federal Rule of Civil Procedure 12(b)(3) in 2014, citing the provider agreement's arbitration clause. After the district court granted United's motion, we reversed on procedural grounds. See *Meinders I*, 800 F.3d at 857–58. But we also noted that, on the merits, "both parties acknowledge that the contractual theory of assumption is one through which a nonsignatory to an arbitration agreement can enforce the agreement." *Id.* at 858. What was left to decide in the litigation, we observed, was "whether such an assumption occurred here." *Id.* Because the factual record was sparse on that point, we remanded to the district court for adversarial testing of United's factual assertions concerning assumption and to "delineate the metes and bounds of United's assumption." *Id.* at 859.

On remand, Meinders amended his complaint. He realleged his TCPA claim and added other state law claims and seven United entities as defendants. After the district court allowed limited discovery focused on assumption, United renewed its motion to dismiss for improper venue under Rule 12(b)(3). The district court again granted United's motion and

stayed the litigation as it concerned the seven other United entities. In granting the motion, the district court held that "United … assumed the material obligations of ACN …, a wholly owned subsidiary of United, under the Provider Agreement, which authorizes United to enforce the arbitration clause." R. 93 at 7. The district court found that United performed various services spelled out in the provider agreement such that, the court reasoned, "the arbitration clause" of the provider agreement "applies with full effect." *Id.* at 7–8. The district court bolstered its conclusion by pointing to United's conduct throughout its relationship with Meinders that included "processing [Meinders's] claims, paying [Meinders] directly on those claims, conducting pre-authorization[,] and other administrative duties." *Id.* at 8. It also found that Meinders was aware United performed these tasks and "assented to United's performance by repeatedly submitting claims to[] and accepting payments from United." *Id.* And, the district court noted, United was not party to the provider agreement. The district court then reiterated that because United completed provider agreement tasks "and assumed ACN's obligations" under the provider agreement, it was "entitled to enforce the arbitration clause" of that agreement. *Id.*

Meinders again appealed. But we lacked jurisdiction to hear the appeal because it concerned a "pro-arbitration decision in a stayed lawsuit" for which he had not sought "a § 1292(b) certification." *Meinders II*, slip op. at 2; see, *e.g.*, *INTL FCStone Fin., Inc. v. Jacobson*, 950 F.3d 491, 500 (7th Cir. 2020). So back to the district court Meinders went. On remand, both parties stipulated to dismissing the seven United entities Meinders included in his amended complaint under Federal Rule of Civil Procedure 41(a)(1)(ii). In a minute order, the

district court noted that under Rule 41(a)(1)(ii) the parties' stipulation was "effective upon filing and does not require judicial approval," and dismissed the entities with prejudice.[4] R. 112. This appeal followed.

## II

The parties agree that this appeal turns on the answer to a single question: Did United assume ACN's obligations under the provider agreement? Meinders does not dispute the accuracy of any fact in the record, and the parties agree that Illinois law applies. So our review is limited to whether, under Illinois law, these facts demonstrate United's assumption of ACN's provider agreement promises such that United may enforce that agreement's arbitration clause against Meinders.

Before turning to that question, however, we must address United's choice of procedural mechanism to enforce the provider agreement's arbitration clause, Federal Rule of Civil Procedure 12(b)(3). Rule 12(b)(3) provides that defendant may move to dismiss plaintiff's case for "improper venue." So far as we can tell, neither party has questioned at any point in this litigation whether that rule provided the appropriate mechanism to enforce an arbitration clause. But the Supreme Court held in *Atlantic Marine Construction Company, Inc. v. United States District Court for the Western District of Texas* that

---

[4] While we have observed that Rule 41(a)(1) "should be limited to dismissal of an entire action," *Taylor v. Brown*, 787 F.3d 851, 857 (7th Cir. 2015), we do not believe that *Taylor* poses a problem here. The parties' stipulation dismissed the "entire action" as it related to the United entities—accordingly, both the entities and all Meinders's claims against them dropped out of the lawsuit when the stipulation was filed. But we again remind parties and district courts that Rule 15(a) is the better course for voluntarily dismissing individual parties or claims in the future. See *id.* at 858 n.9.

"the appropriate way to enforce a forum-selection clause pointing to a state … forum is through the doctrine of *forum non conveniens*," not through a Rule 12(b)(3) motion. 571 U.S. 49, 60 (2013).[5] The Court reasoned that if venue were otherwise proper in a court under 28 U.S.C. § 1391, "a forum-selection clause does not render venue in [that] court … 'improper' within the meaning of … Rule 12(b)(3)." *Id.* at 59. Indeed, "a contract containing a forum-selection clause has no bearing on whether a case falls into one of the categories of cases listed in § 1391(b)."[6] *Id.* at 56.

---

[5] "An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause." *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974). We have implicitly recognized the same. See *Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 733 (7th Cir. 2005). So the holding of *Atlantic Marine* applies with equal force in the context of the provider agreement's arbitration clause.

[6] There is no question that this case falls within at least one of § 1391(b)'s categories:

> (b) Venue in general.--A civil action may be brought in--
>
>> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;
>>
>> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>>
>> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

Turning to the arbitration clause at issue here, the provider agreement calls for arbitration in Minnesota under the Commercial Rules of the American Arbitration Association. See R. 83-1 at 12. Because the clause selects a state forum, United should have brought a motion under the forum non conveniens doctrine to enforce it.

Nevertheless, the fact that United utilized an improper procedural mechanism to enforce the provider agreement's arbitration clause does not alter our resolution of the substantive issue on appeal. As discussed, the substantive issue presented is a limited one—whether United assumed ACN's obligations to Meinders under the provider agreement such that United may enforce that agreement's arbitration clause. Neither the district court's resolution of that question nor ours, see *post* II.B, is affected by the procedural posture. In other words, whether United's motion is analyzed as one under Rule 12(b)(3) or one under forum non conveniens does not impact the substantive analysis. We recognize that we review a motion under the forum non conveniens doctrine for abuse of discretion, see *Mueller v. Apple Leisure Corp.*, 880 F.3d 890, 894 (7th Cir. 2018), not de novo. See *Meinders I*, 800 F.3d at 857. But because we agree with the district court that Meinders's suit should be dismissed in favor of arbitration under de novo review, applying the more deferential abuse of discretion standard would not change our conclusion. See *Martinez v. Bloomberg LP*, 740 F.3d 211, 216–17 (2d Cir. 2014).[7]

---

[7] Dismissal, not transfer, is the proper remedy here. See *Atlantic Marine*, 571 U.S. at 60–61; *Hunt v. Moore Bros., Inc.*, 861 F.3d 655, 657 (7th Cir. 2017) ("The district court's order of dismissal represented its decision that this dispute belongs in the arbitral forum selected by the parties, not the court. Such a dismissal is analogous to one based on *forum non conveniens*."); see

## A

Turning now to the merits, United attempts to limit the scope of Meinders's argument on appeal by asserting that Meinders forfeited his argument concerning specific provisions of the master services agreement between United and ACN.[8] In essence, United faults Meinders for failing to "press below the provisions" of the master services agreement "he presses on appeal," and argues that Meinders cannot use those provisions to support his position that United never assumed ACN's obligations under the provider agreement. Appellee's Br. at 27–28.

Meinders said enough in the district court to satisfy us that he raised below the substantive argument he makes here. See *Dixon v. ATI Ladish, LLC*, 667 F.3d 891, 895 (7th Cir. 2012) ("[A] litigant does not forfeit a position just by neglecting to cite its best authority; it suffices to make the substantive argument."). In the district court, Meinders urged that United had contractual obligations with ACN under the master services agreement that defined the metes and bounds of the contractual relationship between United and ACN, thus making assumption of ACN's duties by United in the provider agreement legally impossible. See, *e.g.*, R. 88 at 8 ("[A]ny obligation by any Defendants [i.e., United] to provide any services on

---

also 14D CHARLES ALLEN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3828 (4th ed. 2021).

[8] Although United frames its position as a forfeiture argument, it seems rather to argue waiver. See *Henry v. Hulett*, 969 F.3d 769, 786 (7th Cir. 2020) (en banc). We address United's position as it presented the argument. We note, however, that the forfeiture/waiver distinction has no effect on the analysis in this case because, as we discuss below, Meinders raised in the district court the substantive argument he presses on appeal.

behalf of ACN pre-dated the Provider Agreement and arose from a pre-existing Master Services Agreement between ACN and UHC Services (the 'Master Agreement').").") That argument is substantively consistent with the argument Meinders makes on appeal. Requiring Meinders to identify the subsections of a contract to press those sections on appeal is inconsistent with our forfeiture doctrine.

The cases upon which United relies offer no comfort. In *Sansone v. Brennan*, the defendant forfeited an argument raised for the first time on appeal. 917 F.3d 975 (7th Cir. 2019). We reasoned that, even if the defendant "generally" asserted (in one sentence) the error below, it did not make out the substance of the argument. See *id.* at 983. Not so here. And in *Libertyville Datsun Sales, Inc. v. Nissan Motor Corporation in U.S.A.*, we held that just because a contractual agreement was before the district court did not entitle a party to make any argument concerning that agreement on appeal. 776 F.2d 735, 736–37 (7th Cir. 1985). Meinders presented much more than just the agreements to the district court; he argued that United's obligations under one (the master services agreement) made United's assumption of the other (the provider agreement) impossible as a matter of law. Because United's forfeiture argument falls flat, we now consider the full scope of Meinders's arguments.

B

As we noted in *Meinders I*, there are several "contract-based doctrines through which a nonsignatory may be bound by an arbitration agreement entered into by others: (1) assumption; (2) agency; (3) estoppel; (4) veil piercing; and (5) incorporation by reference." 800 F.3d at 857. Assumption is the only contractual theory on which United relied below and

on appeal. In simple terms, an assumption involves a non-signatory (i.e., the "delegate") promising expressly or through conduct to perform the contractual obligations of one signatory (i.e., the "delegating party") to another signatory (i.e., the "obligee"). See E. ALLAN FARNSWORTH & ZACHARY WOLFE, FARNSWORTH ON CONTRACTS § 11.18 (4th ed. 2021); 21 WILLISTON ON CONTRACTS § 57.19 ("Under an assumption theory, a party may be bound by an arbitration clause if its subsequent conduct indicates that [it] is assuming the obligation to arbitrate, despite being a nonsignatory."). Express assumption is straightforward—the delegate promises in word or writing to perform the delegating party's duties under the contract. See FARNSWORTH ON CONTRACTS § 11.18. As for implicit assumption through conduct, "if a [delegating] party transfers the entire contract, assigning rights as well as delegating performance, an assumption of those duties by the [delegate] will be inferred from the acceptance of the transfer, unless the language or the situation indicates the contrary." *Id.*; see also *Kneberg v. H.L. Green Co.*, 89 F.2d 100, 103 (7th Cir. 1937) ("It is also the rule, however, that if the assignee … accepts the benefits [of the contract] and adopts the same by seeking performance of the contract or by any equivalent act, indicative of an intention upon his part to adopt and become bound, so that he may be held impliedly to have assumed the burdens thereof, specific performance will lie against him.").

Illinois courts have recognized both express and implicit assumption theories of contract. See *Vernon v. Schuster*, 688 N.E.2d 1172, 1175 (Ill. 1997) (noting that an exception to "successor corporate nonliability" occurs "where there is an express or implied agreement of assumption"); *Equistar Chems. v. Hartford Steam Boiler*, 883 N.E.2d 740, 747 (Ill. App. Ct. 2008) (observing that Illinois courts "have recognized several

contract-based theories under which a nonsignatory to an agreement may be bound to the arbitration agreements of others," including the theory of "assumption"); *People Sav. & Loan Ass'n v. Brinkoetter*, 263 Ill. App. 391, 395 (Ill. App. Ct. 1931) ("It is elementary law that third persons cannot be bound by a contract thus made which is personal in its character and effect, unless such third persons have become parties to it, either by expressly or impliedly assuming the obligations thereof."). Moreover, "Illinois courts have reasoned that, if nonsignatories may be *bound* to arbitrate under these circumstances [including assumption], then it would seem to follow as a corollary that the same types of theories could afford a basis for a nonsignatory to *invoke* an arbitration agreement signed by others." *Equistar Chems.*, 883 N.E.2d at 747–48.

United's conduct over the course of its relationship with Meinders demonstrates that, despite being a nonsignatory to the provider agreement, it assumed ACN's obligations under that agreement. Both parties acknowledge that United performed a variety of services and administrative duties set out in the provider agreement, and that Meinders accepted United's performance. Indeed, Meinders admitted that his relationship with ACN was "through United." R. 83-3 at 59–60. That relationship involved Meinders submitting thousands of claims to United, and United paying those claims directly to Meinders. It also involved Meinders utilizing United's administrative resources to confirm patient eligibility. And this conduct by United makes sense—United agreed in its master services agreement with ACN to perform ACN's provider agreement obligations. What is more, the master services agreement did not prohibit assumption, state that United's performance of ACN's provider agreement obligations should not be construed as an assumption, or note that

United's performance of those obligations was solely pursuant to its promises under the master services agreement. In short, "from day one" United assumed the provider agreement obligations ACN promised to perform for Meinders. It follows, then, that under Illinois law, United may invoke the arbitration clause in the provider agreement against Meinders. See *Equistar Chems.*, 883 N.E.2d at 747–48.

Meinders resists this conclusion, but none of his arguments persuade. Appealing to the "plain language" of the provider and master services agreements, Meinders first insists that because United was not a party to the provider agreement, and thus that agreement's arbitration clause, it cannot rely upon that clause to compel arbitration. But that position is flatly inconsistent with Illinois law, which again Meinders admits governs resolution of this appeal. See *Equistar Chems.*, 883 N.E.2d at 747. And it is inconsistent with Meinders's prior position in this litigation—as we noted in *Meinders I*, "both parties acknowledge[d] that the contractual theory of assumption is one through which a nonsignatory to an arbitration agreement can enforce the agreement." 800 F.3d at 858.

Meinders next turns to the master services agreement, insisting that agreement either prevented United from assuming ACN's obligations under the provider agreement (because it was merely performing under the master services agreement) or limited United's assumption to something less than what would be required to invoke the arbitration clause. As discussed, however, the master services agreement was silent as to whether United could assume ACN's contractual obligations. And, once assumed, United's obligations ran to Meinders, not ACN. The master services agreement clause

limiting United's obligations to ACN to those in that agreement does nothing to disturb this relationship. Nor does the master services agreement's limit on third party beneficiaries. Meinders was not a third-party beneficiary, but an obligee entitled to performance by either United or ACN. See FARNSWORTH ON CONTRACTS § 11.18 ("But though the delegate's assumption makes the delegate liable to the obligee, it does not discharge the duty to the obligee of the delegating party.").

Meinders extends this argument to insist that the master services agreement limited United's assumption to something less than what would be required to invoke the arbitration clause. But Meinders cites no authority for this rule, and the import of *Equistar*—that under Illinois law a nonsignatory that assumes contractual obligations may invoke an arbitration provision of the contract it assumes—counsels against such a rule. On the contrary, the most natural inference from *Equistar's* discussion of assumption is that any assumption of contractual obligations permits the delegate to invoke the remedial provisions of the contract it assumes. See *Equistar Chems.*, 883 N.E.2d at 747–48.

Relatedly, Meinders contends that United was a "Payor" under the provider agreement, and the agreement did not contemplate payors as parties. Moreover, United's performance of its obligations under the master services agreement did not make United a party to the provider agreement, and, as a result, United could not invoke the provider agreement's arbitration clause. But again, that position cannot be squared with the contract theory of assumption. Put simply, even if Meinders is correct in his interpretation of the provider agreement, United still would have been able to (and did) assume

ACN's obligations under that agreement. In essence, Meinders asks us to construe the provider agreement's terms as a de facto prohibition on assumption. That we cannot do. Cf. *Fitzgerald v. Staples*, 88 Ill. 234, 236 (1878) ("A court of law has no right to presume contracting parties intended to insert in a written contract a provision other or different from that which the plain language used would indicate, and then give a construction to the contract which would be legitimate if the contract contained the supposed omitted provision. Such a practice would, in effect, be making contracts for parties, which courts are powerless to do.").

Meinders concludes by tying together his previous arguments to contend that pursuant to the master services agreement United assumed only "payor services" under the provider agreement, which did not include arbitration obligations. The master services agreement, however, broadly charged United with performing ACN's obligations under ACN's provider agreements, not "payor services." In any event, Meinders's argument here fails for the same reason explained above: Whether described as "obligations" or "payor services," United took on ACN's provider agreement duties to Meinders, thus allowing United, under Illinois law, to invoke the arbitration clause in that agreement against Meinders. See *Equistar Chems.*, 883 N.E.2d at 747–48.

Because we decide this appeal on the contractual theory of assumption, we do not reach whether Meinders's acceptance of United's performance estops him from contesting United's assumption.

AFFIRMED.