**BETHLEHEM STEEL CORPORATION,**
Appellant–Plaintiff,

v.

**SERCON CORPORATION,**
Appellee–Defendant.

No. 37A03–9406–CV–239.

Court of Appeals of Indiana.

Aug. 28, 1995.

Rehearing Denied Oct. 27, 1995.

1164

George W. Gessler, William P. Jones, Michael P. Simkus, Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., Chicago, IL,

James E. McHie, McHie, Myers, McHie & Enslen, Hammond, for appellant.

Duane W. Hartman, Blachly, Tabor, Bozik & Hartman, Valparaiso, for appellee.

**OPINION**

HOFFMAN, Judge.

Appellant-plaintiff Bethlehem Steel Corporation appeals the judgment entered after a trial by jury on its claim for indemnity against appellee-defendant Sercon Corporation. The evidence relevant to the appeal is recited below.

Bethlehem's Burns Harbor Plant located in Porter County, Indiana, processes steel and iron through the use of extreme temperatures often causing the metals to become molten. Consequently the furnaces, ladles, molds and other metal handling equipment must be lined with refractory brick.

The high temperatures necessitate continual repairs to the refractory brick linings. Bethlehem retained specialized refractory maintenance firms to perform the repair and maintenance work. In July 1985, Bethlehem entered into an agreement with Serstel Corporation, Sercon's predecessor, whereby Serstel agreed to perform the refractory maintenance work at Bethlehem's Burns Harbor Plant. Sercon was substituted for Serstel and the contract remained in effect through 1987. Included within the maintenance contract was a provision by which Sercon agreed to indemnify and hold harmless Bethlehem for actions brought by employees of Sercon against Bethlehem.

On January 19, 1987, a Sercon employee, George Bottorff, fell from a work platform at the Burns Harbor Plant while performing maintenance duties under Sercon's contract. Bottorff sustained fatal injuries. Suit was instituted against Bethlehem by Bottorff's estate.

Sercon refused to defend, indemnify, or reimburse Bethlehem for the expenses it incurred attributable to the lawsuit. Bethlehem's motion for summary judgment in the Bottorff case was denied. After the first trial in the action ended in a mistrial, Bethlehem settled the suit for $140,000.00.

Bethlehem then brought this action against Sercon for indemnification and breach of contract. Sercon filed a counterclaim. Both parties moved for summary judgment. Sercon's motion was denied, and judgment was entered against Sercon on its counterclaim. The trial court granted partial summary judgment for Bethlehem finding the indemnity provision valid and that Sercon was liable to Bethlehem for indemnification. The court denied summary judgment as to the amount of damages and their "reasonableness." The cause was set for trial as to damages, including attorney's fees.

At the deposition of a Sercon witness, Harry Jennings, it was revealed that Jennings' law firm represented Bethlehem in an ongoing action. Jennings acknowledged that he had not checked for a conflict of interest but would "retire" from the case. Sercon requested that Bethlehem waive the conflict of interest to enable Jennings to testify on its behalf against Bethlehem. Bethlehem refused.

Sercon then filed a motion to compel Bethlehem to waive the conflict of interest to enable Jennings to testify on its behalf. The trial court granted the motion to compel. The court also granted Sercon's motion to quash subpoenas Bethlehem directed to a Sercon witness and to Sercon's insurer.

Prior to trial, Sercon requested sanctions against Bethlehem for its refusal to waive the conflict of interest. The court determined that absent the waiver, Bethlehem's claim for reimbursement for defense costs and attorney's fees would be removed from the jury. Accordingly, no evidence of reasonableness of attorney's fees was presented at trial.

At trial, Bethlehem presented evidence as to the reasonableness of the settlement it entered into in the Bottorff case. Sercon argued that the settlement was voluntary and that Bethlehem would have prevailed on retrial. The jury returned a verdict of $70,000.00 for Bethlehem. This appeal ensued.

As restated, Bethlehem raises three issues for review:

(1) whether the $70,000.00 jury verdict was inadequate and against the manifest weight of the evidence;

(2) whether the trial court erred in granting the motion to compel Bethlehem to provide a waiver to the conflict of interest by a Sercon witness and for imposing sanctions absent the waiver; and

(3) whether the trial court erred in quashing Bethlehem's subpoenas.

Sercon raises one issue on cross-appeal. As restated, the issue is:

(1) whether the trial court erred in granting Bethlehem summary judgment as to the validity of the indemnity clause of the contract.

■ The validity of the indemnity clause is the threshold issue. Sercon contends that the indemnity clause could not be enforced based upon IND.CODE § 26-2-5-1 (1982 Ed.). The statute provides:

**"Indemnity agreements against public policy as void and unenforceable; exception**

Sec. 1. All provisions, clauses, covenants, or agreements contained in, collateral to, or affecting any construction or design contract except those pertaining to highway contracts, which purport to indemnify the promisee against liability for:

(1) death or bodily injury to persons;

(2) injury to property;

(3) design defects; or

(4) any other loss, damage or expense arising under either (1), (2) or (3);

from the sole negligence or willful misconduct of the promisee or the promisee's agents, servants or independent contractors who are directly responsible to the promisee, are against public policy and are void and unenforceable."

IND.CODE § 26-2-5-1. Sercon contends that the indemnification clause contained within the contract is void because the contract is essentially one for construction rather than maintenance.

■ This Court has analyzed the purpose of the statute and defined "construction" as used in the statute. *See Ogilvie v. Steele by Steele* (1983), Ind.App., 452 N.E.2d 167, 169–170. The statute which voids agreements to indemnify against one's own negligence in

construction contracts, other than those for highway construction, was enacted "to protect employees in the construction industry and the public from irresponsible contractors who have shifted their own liability onto a subcontractor whose insurance does not cover contract liability." *Id.* at 169. "Construction work means to build, erect, or create." *Id.* at 170.

The agreement of the parties included a description of the contract as one for performance of "general refractory maintenance for the balance of 1985, 1986 [and] 1987." Sercon does not argue that it was actually creating, building, or erecting anything that was not previously in place at Bethlehem. Instead, Sercon contends that the maintenance of the previously created, built, or erected items constitutes construction.

The line which Sercon intends to blur was specifically drawn in the definition of "construction." Black's Law Dictionary, Sixth Edition, defines construction as "[t]he creation of something new, as distinguished from the repair or improvement of something already existing." Here, the trial court did not err in determining as a matter of law that the contract is not governed by IND. CODE § 26–2–5–1 inasmuch as, the contract is one for maintenance entirely distinct from construction.

■ Next, Bethlehem contends that the jury verdict awarding it $70,000.00 was inadequate and against the manifest weight of the evidence. As noted above, Bethlehem moved for summary judgment. The trial court granted summary judgment as· to the validity of the indemnification clause but denied summary judgment as to the amount of the damages.

The indemnification clause, in pertinent part, provides:

"SEVENTH. RESPONSIBILITY AND INSURANCE: ...

The Contractor shall indemnify and save harmless each of the Bethlehem Companies from and against all loss or liability for or on account of any injury (including death) or damages received or sustained by the Contractor or any of its subcontractors or any employee, agent or invitee of

the Contractor or any of its subcontractors by reason of any act or omission, whether negligent or otherwise, on the part of any of the Bethlehem Companies or any employee, agent or invitee thereof or the condition of the Site or other property of any of the Bethlehem Companies or otherwise. The Contractor shall further indemnify and save harmless each of the Bethlehem Companies from and against all loss or liability for or on account of any injury (including death) or damages received or sustained by any person or persons by reason of any act or neglect on the part of the Contractor or any of its subcontractors or any employee, agent or invitee of the Contractor or any of its subcontractors, including any breach or alleged breach of any statutory duty which is to be performed by the Contractor hereunder but which is or may be the duty of any of the Bethlehem Companies under applicable provision of law...."

■ Although courts look upon indemnification clauses with disfavor, a party may contract to indemnify itself against its own negligence if the other party "knowingly and willingly" agrees to indemnification. *Id.; see also Fresh Cut, Inc., v. Fazli* (1994), Ind. App., 630 N.E.2d 575, 578. In the present case, no suggestion of disparity in bargaining exists or other factors which would support a finding that the parties did not enter into the contract "knowingly."

■ Proceedings on indemnity agreements are governed by contract law, and general rules of evidence regarding contract law are applicable. *Zebrowski & Assoc. v. City of Indianapolis* (1983), Ind.App., 457 N.E.2d 259, 261. The indemnitee must prove all material elements of its cause of action by a preponderance of the evidence. The indemnitor must prove any affirmative defenses. A contract which includes indemnification should be construed to cover all losses and damages which reasonably appear to be intended. *Id.* The indemnity clause as part of the entire contract, should be presumed to be a factor in the decision as to essential conditions such as price.

Parties to a contract have the right to define their mutual rights and obligations, and courts may not write a new contract. *See Johnson v. Sprague* (1993), Ind.App., 614 N.E.2d 585, 588. When a contract is clear and the intentions of the parties are apparent, the parties will be required to perform consistently with the bargain they made absent equitable considerations such as fraud, misrepresentation, undue influence and the like. *INB Banking v. Opportunity Options* (1992), Ind.App., 598 N.E.2d 580, 582.

The clause in the present case provides for indemnity for all losses and liability. Once the validity of the clause is established, principles of contract interpretation and indemnity suggest that the amount of the indemnification award should be considered liquidated upon payment made by the indemnitee under the provisions of the indemnity clause. This is especially so when the indemnitor has had an opportunity to participate in the claim but fails to honor the indemnity contract. *Cf. Sink & Edwards, Inc. v. Huber, Hunt & Nichols* (1984), Ind.App., 458 N.E.2d 291, 297 (indemnitor who denies liability on indemnity contract confers indemnitee right to exercise reasonable judgment in settling case without consulting indemnitor). Thus, barring evidence of collusion between the indemnitee and the claimant, the validity of the indemnity clause should obviate the necessity for further proceedings.

However, Indiana courts have held that while an indemnitee's decision not to proceed to judgment provides no basis for the indemnitor's assertion that a settlement constituted a voluntary payment, the question as to whether the settlement was fair and reasonable remains. *See Progressive Const. v. Ind. & Mich. Elec.* (1989), Ind.App., 533 N.E.2d 1279, 1287; *see also Sink,* 458 N.E.2d at 297. That the indemnitee must litigate the reasonableness of the indemnity amount as a matter of course appears to be in conflict with the purpose of contracts.

But for the current state of law on indemnity contracts requiring a determination whether the settlement amount was reasonable, Bethlehem's contention that the jury's verdict below the actual settlement amount was inadequate and against the manifest weight of the evidence appears well taken under a logical analysis. The indemnitor, Sercon, denied liability under a contract later determined to be valid. Then while on the sidelines during the underlying litigation, Sercon was able to reap a benefit by collaterally attacking the settlement amount.

The law regarding indemnity contracts has evolved such that indemnitors have a leverage position if they choose not to honor an indemnification agreement. Even if the indemnity clause is found valid, indemnitors gain a "second bite at the apple" by placing the burden upon the indemnitee to prove that the indemnity amount is "reasonable." Courts are placed in the untenable position of determining that a party has breached its agreement, then allowing the party to capitalize on its recalcitrance by failing to give effect to the parties' contract as written. In this case, the agreement was that indemnification would be provided for "all loss or liability." Such court sanctioned revision of contracts is contrary to established contract law, the principles of judicial economy and the principles of collateral estoppel.

However, given the state of the law on indemnity contracts and our standard on review requiring that a court not substitute its determination of "reasonableness" for that of the jury, *see Jordan v. Talaga* (1989), Ind. App., 532 N.E.2d 1174, 1186, the amount of the damages award must stand.

Next, Bethlehem contends that the trial court erred in granting the motion to compel which required Bethlehem to provide a conflict of interest waiver in order to allow an attorney representing Bethlehem in another action to testify on behalf of Sercon regarding the reasonableness of attorney's fees in the present proceedings. Bethlehem's failure to provide the waiver resulted in a court-imposed sanction: the jury would not be allowed to consider the issue of attorney's fees.

An indemnitee is entitled to recover attorney's fees expended defending the underlying claim and prosecuting the claim for indemnification. It has been held:

"An indemnitee, who incurs legal expenses through defending an action against him for which he is entitled to indemnification, is entitled to recover the expense of creating his defense, including reasonable attorney fees. This is especially true where the indemnitor has been notified of the suit and refuses the opportunity to defend it. The indemnitee may recover attorney fees from the indemnitor incurred through an original action which is settled, and also for the cost of prosecuting the indemnity clause." [Citations omitted.]"

*Zebrowski*, 457 N.E.2d 259, 264. Generally, the reasonableness of the attorney's fees is a matter to be resolved in an evidentiary hearing. *See id.* (majority opinion with one judge dissenting, found attorney fee award reasonable without hearing because amount not exorbitant under circumstances).

Here Bethlehem was foreclosed from presenting evidence of a component of its damages, attorney's fees, for refusing to waive the conflict of interest. Although research reveals no Indiana cases regarding this precise issue, several cases and the Indiana Rules of Professional Conduct are instructive.

In *Canfield v. Sandock* (1990), Ind., 563 N.E.2d 526, our supreme court outlined the attorney-client privilege as the source from which the physician-patient privilege was derived. In so doing the court stated:

"The keeping of professional confidences existing between an attorney and client is enforced by two mechanisms, I.C. 34–1–14–5, which renders attorneys incompetent to testify, and Ind. Professional Conduct Rule 1.6, which forbids attorneys to 'reveal information relating to representation of a client unless the client consents after consultation.' The rationale underlying the attorney-client privilege, which was recognized at common law, and scope of the enforcement mechanisms have been explained by this Court as follows:

'A fundamental principle in the client-lawyer relationship is that the lawyer maintain confidentiality of information relating to the representation. The client is hereby encouraged to communicate fully and frankly with the lawyer even as to embarrassing or legally damaging subject matter.

The principle of confidentiality is given effect in two related bodies of law, attorney-client privilege (which includes the work product doctrine) in the law of evidence and the rule of confidentiality established in professional ethics. The attorney-client privilege applies in judicial and other proceedings in which a lawyer may be called as a witness *or otherwise required to produce evidence concerning a client.* The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law.'

Prof.Cond.R. 1.6 comment (emphasis added [in original] ). The attorney-client privilege protects against judicially compelled disclosure of confidential information regardless of whether the information is to be disclosed by way of testimony or by court-ordered compliance with a discovery request which a party has attempted to resist. The harm to be prevented is not the manner in which the confidence is revealed, but the revelation itself."

*Id.* at 528–529.

■ Also, the rules of professional conduct make clear that an attorney may not undertake representation in a matter contrary to the interest of a client. *See* Ind. Professional Conduct Rule 1.7 (loyalty to client prohibits undertaking representation directly adverse to that client without that client's consent); *see also Matter of Colestock* (1984), Ind., 461 N.E.2d 137, 140 (proper administration of justice necessitates maintenance of independent professional judgment by lawyer on behalf of client).

■ The requirement of loyalty can be no less compelling when an attorney acts as a witness against a client rather than undertaking representation adverse to the client. In *Colestock*, a disciplinary action, the supreme court noted: "[t]he Respondent has failed to appreciate the obligation of undivided loyalty owed by an attorney to every client for whom he appears and whose inter-

ests he must protect." *Colestock*, 461 N.E.2d at 140.

 That the duty of loyalty to a client extends to all members of a firm, not merely those directly responsible for the client's representation, is beyond question. "While lawyers are associated in a firm, none of them shall represent a client if he knows or should know in the exercise of reasonable care and diligence that any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8, 1.9 or 2.2." Prof.Cond.R. 1.10.

 Further, it is noteworthy that the attorney-client privilege is that of the client and not of the lawyer. Preamble to Indiana Professional Conduct. It follows that a conflict of interest is not subject to a motion to compel its waiver.

In the present case, there was no showing that Jennings was the only or best source to testify against Bethlehem as to the reasonableness of the attorney's fees Bethlehem requested under the indemnification clause. As such, the trial court abused its discretion in issuing the order compelling Bethlehem to waive the conflict of interest. *See Cua v. Morrison* (1993), Ind.App., 626 N.E.2d 581, 583, *adopted* (1994) Ind., 636 N.E.2d 1248, Shepard, C.J., concurring in result (grant or denial of discovery motions will be overturned only for abuse of discretion, that is, order unreasonable under circumstances and prejudicial to party's rights). Accordingly, the cause must be remanded for a hearing on attorney's fees.

 Finally, Bethlehem contends that the trial court erred in quashing certain subpoenas. The record reveals that the subpoenas were issued after the discovery deadline. The court's ruling was directed to the deadline and not the substance of the subpoenas. The court noted that Bethlehem could cross-examine the witness about the information requested if it so desired. As recited above, a trial court's ruling on discovery orders will be overturned only for an abuse of discretion. *See id.* The trial court did not abuse its discretion in ruling that the subpoenas were untimely.

Accordingly, the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part; reversed and remanded in part.

GARRARD and FRIEDLANDER, JJ., concur.