In the

# United States Court of Appeals
## For the Seventh Circuit

No. 23-1698

AXIS INSURANCE COMPANY,

*Plaintiff-Appellant,*

*v.*

AMERICAN SPECIALTY INSURANCE & RISK SERVICES,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Northern District of Indiana, Fort Wayne Division.
No. 1:19-cv-00165-DRL — **Damon R. Leichty**, *Judge.*

ARGUED JANUARY 9, 2024 — DECIDED AUGUST 6, 2024

Before ROVNER, HAMILTON, and JACKSON-AKIWUMI, *Circuit Judges.*

HAMILTON, *Circuit Judge.* Pursuant to an indemnification clause in a contract, plaintiff-appellant AXIS Insurance Company sought indemnification from defendant-appellee American Specialty Insurance & Risk Services for claims that AXIS settled. The parties' contract did not require AXIS to give American Specialty the opportunity to choose between approving the settlement payment and assuming the defense

itself. But American Specialty argues that AXIS was obliged to do so under Indiana law. The district court agreed with American Specialty and granted summary judgment for it.

We reverse. Insurance companies like AXIS and American Specialty bargain for the rights and obligations they hold in a contractual relationship like this one, including the specifics of a promise of indemnification. The contract in this case did not obligate AXIS to tender the defense to American Specialty before settling claims against AXIS. To the contrary, the contract required AXIS to provide notice of claims to American Specialty, but AXIS otherwise retained nearly complete control over settlement decisions.

Additionally, Indiana case law does not hold that the tender of defense is an implied condition in an indemnification agreement. Indiana law respects the freedom to contract in insurance agreements. We see no reason to think the Indiana Supreme Court would depart from that respect for contractual freedom and impose an implied requirement like the one advocated by American Specialty.

I.  *Factual and Procedural Background*

AXIS is an insurance company that specializes in insurance policies for professional sports teams and other organizations in entertainment industries. In 2008, AXIS signed a contract with American Specialty that allowed American Specialty to "accept proposals for insurance, negotiate, underwrite and accept insurance coverages on [AXIS's] behalf…." The parties' contract stipulated that if American Specialty acted negligently in these tasks, it would indemnify AXIS for any resulting losses. That indemnification provision lies at the core of this case.

A.  *Insurance for the Buccaneers*

In May 2013, an agent for the professional football team Tampa Bay Buccaneers reached out to American Specialty asking for an insurance quote. The Buccaneers wanted to obtain a variety of insurance coverages, including employer's liability coverage. American Specialty sent back an insurance proposal and binder on behalf of AXIS. These documents mentioned employer's liability coverage, but everyone involved in this litigation—AXIS, American Specialty, and the Buccaneers—has interpreted the language differently. When a Buccaneers' player later asserted a substantial personal injury claim against the team, the parties to the insurance purchase disagreed about whether the Buccaneers' policy included employer's liability coverage. The Buccaneers believed that the policy included it because that was what the team had requested. Alternatively, the Buccaneers demanded that AXIS and American Specialty cover any gap in coverage due to employer's liability being left off the policy. AXIS insisted that the policy did not include employer's liability coverage because, regardless of what the binder and proposal said, the policy that was actually issued to the Buccaneers did not include it. American Specialty was caught in the middle. It agreed with AXIS that the actual policy did not include employer's liability coverage, but it concluded that a mistake had been made in issuing the policy. American Specialty urged AXIS to reform the policy to include employer's liability coverage.

American Specialty and AXIS worked together for several years, but effective February 2014, they agreed to terminate their contract. The parties' contract was in effect when the insurance policy was issued to the Buccaneers, but the two

companies were no longer working together when the disputed claim arose.

B.  *The Tynes Infection and Claim*

Nobody recognized the absence of employer's liability coverage until it became the center of debate during the review of a claim. In March 2015, lawyers for Buccaneers kicker Lawrence Tynes sent a demand letter and a draft complaint to the Buccaneers alleging that he had suffered a career-ending injury after contracting a Methicillin-resistant Staphylococcus Aureus (often known as "MRSA") infection at the team's facility. Tynes alleged that he contracted the infection while rehabilitating from a medical procedure that was performed on his kicking foot. The draft complaint sought over $15 million in compensatory damages for the career-ending injury. Tynes had won two Super Bowls and had kicked game-winning field goals in overtime in two separate conference championship games. See Rich Cimini, *Tynes Lives Dream Yet Again*, ESPN (Jan. 23, 2012, 2:34 AM), https://perma.cc/PX9J-BD8B.

The draft complaint named the Tampa Bay Buccaneers and the Tampa Bay Mall Limited Partnership (the owner and operator of the Buccaneers' practice facility) as defendants. American Specialty quickly notified AXIS of the imminent claim. After reviewing the claim, AXIS denied coverage to the Buccaneers and refused to indemnify the team for Tynes' claims.

The employer's liability issue became apparent immediately. AXIS had denied coverage to the Buccaneers on Tynes' claims because it believed that employer's liability insurance was not part of the insurance policy it had actually issued.

American Specialty, however, told AXIS that the policy should be reformed to include employer's liability coverage—American Specialty said that a "mistake" had been made that left employer's liability coverage off the Buccaneers' policy even though the team had requested it. AXIS and American Specialty exchanged emails about their conflicting views. In those emails, American Specialty said twice that the Buccaneers' insurance policy should have included employer's liability coverage. AXIS stressed that the policy did not include the coverage and that it would seek indemnification from American Specialty for any losses resulting from American Specialty's negligence in preparing the policy.

AXIS and American Specialty had ended their cooperative business relationship the year before. When the dispute arose about coverage of the Tynes claim, AXIS told American Specialty that AXIS itself would handle the Tynes claim due to the potential exposure it presented. On April 8, 2015, AXIS instructed American Specialty to "keep an administrative file, pay bills and chronicle the claim with file note entries as normal." AXIS reiterated this message a few weeks later, saying that "American Specialty has no authority in this matter and should not be involved in the claims handling in any way." On May 4, 2015, outside counsel for AXIS echoed the same message in another email:

> Please also be advised that American Specialty has no authority with respect to handling this claim, and that all claim management activity, including determinations and evaluations of coverage issues, are solely within AXIS's purview. American Specialty is not to have any role in the directing or managing of the defense of

this claim. American Specialty's primary obligation is to maintain an administrative file, process expenses, chronicle the file with claim note entries, report as requested, review the reporting completed by defense counsel, and report to AXIS accordingly.

C. *The Tynes Litigation and Settlement*

Tynes and the Buccaneers did not reach a quick settlement, so Tynes filed suit. The parties in the lawsuit agreed to attempt mediation. In an email sent on October 5, 2016, the Buccaneers' attorney informed AXIS and American Specialty of the planned mediation and said that the Buccaneers expected both companies to attend. AXIS emailed American Specialty separately to explain that it was confident in its legal position about the lack of employer liability coverage but was interested in a "market solution" to the matter (presumably a negotiated settlement, especially keeping in mind that litigation of the coverage issue would require disclosure of American Specialty's emails siding with the Buccaneers and urging AXIS to reform the policy in the team's favor). American Specialty did not respond to this email. Though American Specialty sent a few more emails before mediation, it did not say anything to AXIS about settling the claims.

In December 2016, AXIS attended a mediation session along with Tynes and the Buccaneers. American Specialty did not attend. The parties who attended the mediation session reached a confidential settlement, ending the Tynes suit.

D. *This Lawsuit for Indemnification*

AXIS's contribution to the Tynes settlement set the stage for this lawsuit. In April 2017, AXIS demanded that American

Specialty indemnify it for the settlement payment that AXIS had made. American Specialty refused. After a failed attempt at arbitration, AXIS filed this suit against American Specialty seeking indemnification for its contribution to the Tynes settlement, as well as attorney fees and costs.

The parties filed cross-motions for summary judgment, though AXIS moved for only partial summary judgment. AXIS sought to reduce the number of issues that would be decided at trial by negating several of American Specialty's affirmative defenses. American Specialty, on the other hand, argued that it should win outright because AXIS made its settlement payment without giving American Specialty the opportunity to approve the settlement or assume the defense. Without this offer, American Specialty argued, AXIS's settlement payment was voluntary because AXIS could not show it was actually liable on the underlying claim.

The district court agreed with American Specialty and granted it summary judgment. *AXIS Ins. Co. v. American Specialty Ins. & Risk Servs., Inc.*, 662 F. Supp. 3d 950, 960 (N.D. Ind. 2023). Starting with Indiana case law, the court noted that indemnitors do not need to reimburse "voluntary" settlement payments by indemnitees. *Id.* at 955. But whether a payment is "voluntary" can be hard to say; Indiana law does not draw a sharp boundary. So the court looked to other sources—cases from other jurisdictions and a treatise—and concluded that a settlement payment is *not* voluntary in two circumstances: first, if an indemnitee gives notice and an opportunity to defend to its indemnitor, *id.* at 955–57, and second, if the indemnitee shows that it was "actually liable" on the underlying claim, *id.* at 956, 959. In the first circumstance, the court reasoned that giving indemnitors a choice ensured that

indemnitees would not abuse indemnification agreements to shift liability onto indemnitors improperly. *Id.* at 956. Regarding the second circumstance, no payment could be deemed voluntary if an indemnitee is actually liable to the claimant.

The district court found that, although AXIS had invited American Specialty to the Tynes mediation, it never offered American Specialty the opportunity to choose between approving the settlement and assuming the defense of a potential coverage claim by the Buccaneers. *Id.* at 957–58. Rather, the court found that AXIS prevented American Specialty from defending the claim for months and never clearly reversed its position. *Id.* at 958. Because AXIS did not tender the defense to American Specialty, the court concluded that AXIS had to show actual liability on the potential claim by the Buccaneers. The court found that AXIS could not make that showing and granted summary judgment to American Specialty, finding no duty to indemnify AXIS for its payment toward the Tynes settlement with the Buccaneers. *Id.* at 959.

II.  *Analysis*

The issue on appeal is whether the indemnification agreement required AXIS to give American Specialty the opportunity to choose between approving the settlement agreement and assuming the defense. The parties agree that Indiana law governs their contract, so our role is to apply Indiana law as we predict the Indiana Supreme Court would today. *Circle Block Partners, LLC v. Fireman's Fund Ins. Co.*, 44 F.4th 1014, 1018 (7th 2022).

Indemnity agreements like the one in this case are governed by contract law. *Bethlehem Steel Corp. v. Sercon Corp.*, 654 N.E.2d 1163, 1167 (Ind. App. 1995). Parties can "define their

mutual rights and obligations" through contract and decide for themselves what sorts of preconditions an indemnitee must satisfy before being entitled to indemnification. *Id.* at 1168. As explained below, the parties' contract does not say that AXIS was obliged to tender the defense to American Specialty. So there is no textual basis for concluding that the parties intended to require AXIS, if it wanted indemnification, to give American Specialty the opportunity to assume the defense. To the contrary, the fact that other preconditions to settlement were included but tender of defense was not signals that the parties did not intend for tender of defense to be a precondition to settlement.

American Specialty resists this conclusion. Echoing the district court's reasoning, American Specialty argues that, as a matter of common law, its promise to indemnify AXIS was subject to an implied condition precedent: that AXIS had a duty to tender the defense to American Specialty (absent proof of AXIS's actual liability to the Buccaneers). No appellate precedent in Indiana holds that such a duty exists, and we do not predict that the Indiana Supreme Court would do so now. Sophisticated insurance companies like American Specialty know that indemnification agreements are governed by principles of contract law. See *Bethlehem Steel*, 654 N.E.2d at 1167–68. If an indemnitor wants the right to choose between approving a settlement or assuming the defense, it can bargain for that right. But if it does not, an indemnitor cannot cry foul when it knows its indemnitee is facing pressure to settle, especially when the indemnitor refuses even to respond to the indemnitee's communications.

A.  *Indemnification Under the Parties' Contract*

The agreement between AXIS and American Specialty consisted of three documents: the Program Manager Agreement, the Underwriting Guidelines Addendum, and the Claims Service and Management Agreement. Together, these documents spelled out the rights and obligations that AXIS and American Specialty owed each other. The parties identify three provisions as relevant to whether AXIS needed to give American Specialty the opportunity to approve the Tynes settlement or to assume the defense.

First is the indemnification provision itself. In Section 27.4 of the Program Manager Agreement, American Specialty agreed "to defend, indemnify, and hold AXIS harmless from and against all claims … which result from any negligent or wilful acts" by American Specialty. Section 27.4 did not say anything about giving American Specialty a *right* to defend claims against AXIS that are subject to the duty to defend and indemnify.

American Specialty argues, however, that this provision linked American Specialty's obligation to "defend" and "indemnify" AXIS, such that AXIS could not seek indemnification unless it also gave American Specialty the opportunity to defend. This conclusion does not follow from the text. Section 27.4 was a one-way street—it listed only obligations that American Specialty owed to AXIS. It did not specify obligations that AXIS owed American Specialty, such as a duty to tender the defense. Holding AXIS's contractual rights against it would rewrite the plain terms of the contract, and Indiana courts teach us not to pick up the pen ourselves when parties have stated their intentions clearly. *Bethlehem Steel*, 654 N.E.2d at 1168.

A related contract provision, Section 27.6 of the Program Manager Agreement, listed procedures that AXIS had to follow to secure indemnification from American Specialty. Section 27.6 stated: "Upon the assertion … of any claim that may give rise to liability …, the party seeking indemnifications shall promptly notify the other party, in writing, of the existence of such claim and the indemnity claimed." Such notice requirements are routine under indemnification agreements and familiar to any driver or homeowner who has needed to notify a home- or auto-insurance carrier of an accident. But that requirement of written notice was the only condition the contract imposed on AXIS for seeking indemnification. Absent from Section 27.6 is any requirement that AXIS tender the defense to American Specialty.[1]

Finally, Section 4.2 of the Claims Service and Management Agreement reserved authority for claims settlement to AXIS. That provision said:

> AXIS shall retain ultimate settlement authority
> for all claims serviced hereunder, and reserves

---

[1] American Specialty argues that AXIS forfeited arguments based on Section 27.6 by failing to refer to this provision in its summary judgment briefing. We reject the forfeiture argument. To preserve an argument for appeal, a party must have raised the "substantive argument" in the district court but need not have presented all aspects of the argument in the district court. E.g., *Dr. Robert L. Meinders, D.C., Ltd. v. United Healthcare Servs., Inc.*, 7 F.4th 555, 561 (7th Cir. 2021). As we said in *Meinders*, a party on appeal can refer to provisions of an underlying contract in addition to those referenced in the trial court, so long as the party makes the same substantive arguments in both places. *Id.* Also, the Northern District of Indiana requires summary judgment briefs to be substantially shorter than the appellate page limit, and we ordinarily expect appeals to present fewer issues than were addressed in the district court.

> the right, upon notice to [American Specialty],
> to override [American Specialty] in the adjust-
> ment and settlement or rejection of any claim,
> and shall have the option to assume or direct the
> handling and settlement of any individual
> claim.

Like the provisions in the Program Manager Agreement, Section 4.2 did not impose any conditions on AXIS for settling a claim. Instead, it reserved to AXIS nearly complete control in settling claims within the scope of the indemnification agreement. The only obligation imposed upon AXIS in this provision was the duty to provide notice if AXIS sought to override American Specialty's decision in a settlement proceeding. Obviously, that obligation was not triggered in this case because American Specialty stayed silent and did not participate in the mediation or settlement negotiations.

Nowhere in the parties' contract was there a requirement that AXIS give American Specialty an opportunity to approve the settlement or to assume the defense in order to secure indemnification. The parties could have contracted for such a requirement. As Section 27.6 of the Program Manager Agreement shows, the parties agreed that AXIS had to provide written notice of claims to receive indemnification. But they did not agree to the additional terms argued by American Specialty.

B. *Indemnification Under Indiana Law*

We stress again that indemnification disputes are generally governed by the terms of a contract. *Bethlehem Steel*, 654 N.E.2d at 1167–68. But American Specialty argues, and the district court found, that AXIS had a duty under the common

law of Indiana to tender the defense to American Specialty, at least if AXIS wanted indemnification for potential liability to the Buccaneers. We disagree with that proposition. No tender-of-defense requirement was an implied term of the contract.

No Indiana precedent holds that indemnification agreements include an implied contractual term requiring indemnitees to tender the defense before settling a claim. In three cases, the Indiana Court of Appeals and a federal district court found that a settlement payment was not voluntary where, as a matter of fact, the indemnitee notified the indemnitor of the proposed settlement and gave it an opportunity to approve the settlement or to assume the defense. *Sequa Coatings Corp. v. Northern Indiana Commuter Transp. Dist.*, 796 N.E.2d 1216, 1230 (Ind. App. 2003) (indemnitor ignored "repeated requests for indemnification and assistance in defending against the litigation"); *Sink & Edwards, Inc. v. Huber, Hunt, & Nichols, Inc.*, 458 N.E.2d 291, 293 (Ind. App. 1984) (indemnitor received notice of "intention to settle and [was] given the opportunity to take over the defense of the action"); *Price v. Amoco Oil Co.*, 524 F. Supp. 364, 367 (S.D. Ind. 1981) (settlement effectuated after notice "and an opportunity to assume the defense of the action"). But the fact that the indemnitees in those cases tendered the defenses does not mean that the tenders were essential to the courts' findings that those payments were not voluntary. None of the opinions indicated whether the contracts required the tender of defense, none found the tender of defense to be an implied contractual requirement, and none found that the tender of defense was an essential prerequisite to settling claims.[2]

---

[2] The court granted rehearing in *Sequa Coatings* to clarify its holding on a different issue in that case. *Sequa Coatings Corp. v. Northern Indiana*

As the district court recognized, some courts in other jurisdictions have developed a framework for assessing the voluntariness of settlement payments for which indemnification is sought. In these jurisdictions, if an indemnitee gives its indemnitor notice and an opportunity to defend, then the indemnitee must show only potential liability for its payment to be deemed non-voluntary. If the indemnitee does not satisfy these conditions, though, it must show actual liability. See, e.g., *Chevron Oronite Co. v. Jacobs Field Servs. N.A., Inc.*, 951 F.3d 219, 226 (5th Cir. 2020) (applying Louisiana law and also considering case law from Fifth Circuit); *Genger v. Genger*, 76 F. Supp. 3d 488, 501 (S.D.N.Y. 2015) (applying New York law).

But other courts—including the other two states in this circuit—have reached the opposite conclusion and held that, in the absence of an express term in a contract, indemnitees do not need to tender the defense so long as the indemnitor has notice of the claims. See *Cincinnati Cos. v. West American Ins. Co.*, 183 Ill. 2d 317, 323–26, 701 N.E.2d 499, 502–04 (1998) (concluding that duty to defend was triggered where insurer is put on notice of claims against insured; an explicit offer to assume the defense was not required); *Towne Realty, Inc. v. Zurich Ins. Co.*, 201 Wis. 2d 260, 267–69, 548 N.W.2d 64, 66–67 (1996) (same).

The Supreme Judicial Court of Massachusetts addressed this issue in *Psychemedics Corp. v. City of Boston*, 486 Mass. 724, 161 N.E.3d 399 (2021). The city of Boston relied on a private company, Psychemedics Corporation, to conduct hair follicle testing of police officers to detect illegal drug use. Officers

---

*Commuter Transp. Dist.*, 800 N.E.2d 926 (Ind. App. 2003). The rehearing did not alter the court's reasoning relevant here.

sued the city alleging that the follicle testing was unreliable and had a disparate impact on people of color. The city sought indemnification from Psychemedics based on a contract provision stipulating that Psychemedics would "assume the defense of" the city and "hold [it] harmless" from all suits and claims arising from "wrongful or negligent" acts by Psychemedics. *Id.* at 725, 728. Psychemedics sought a declaratory judgment that it was not required to indemnify the city because the city had not allowed it to assume the defense of the cases brought by the police officers. So the issue decided by the Massachusetts court matches the issue we confront today: if no contractual provisions resolve the issue, does an indemnitee need to explicitly tender the defense to secure indemnification? *Id.* at 731.

The Massachusetts court reversed a grant of summary judgment to Psychemedics, holding that material facts needed to be resolved as to whether Psychemedics had an opportunity to assume the defense. *Id.* at 743–44. Critical to the court's holding was its conclusion that, between contracting parties, the obligation to indemnify is triggered after an indemnitee "alert[s] the indemnitor to the existence of the claim." *Id.* at 736. No explicit tender of defense was required. *Id.* at 735–40.

Indiana law tracks the reasoning in *Psychemedics*. As Indiana courts have emphasized, contract law governs indemnity disputes, and courts may not rewrite a contract that defines parties' mutual rights and obligations. *Bethlehem Steel*, 654 N.E.2d at 1167–68. That idea has led at least one Indiana court to reject the doctrine of implied contractual indemnity because "sophisticated commercial entities" were "free to include an indemnity provision" in their contract but "failed to

do so." *Indianapolis-Marion County Public Library v. Charlier Clark & Linard, PC*, 929 N.E.2d 838, 852 (Ind. App. 2010). Similarly, here, we decline to add new rights and obligations to a contract between two sophisticated insurance companies.

Even if we thought Indiana courts might be inclined to add new ink to the parties' contract under other circumstances, this case is not a promising candidate for predicting adoption of an implied requirement for an explicit tender-of-defense requirement. The undisputed facts show that AXIS notified American Specialty that it was considering settling a claim within the scope of the indemnification clause. American Specialty did not respond with an argument against settlement. That would have been difficult, given American Specialty's earlier correspondence urging AXIS to cave by reforming the policy to provide employer's liability coverage. American Specialty instead responded with … silence. At the very least, an indemnitor who disagrees with the choice to settle should be proactive and communicate its concerns rather than remain silent and hope that a court will bail it out later.

C. *Application to this Case*

The most extraordinary feature of this case is American Specialty's silence in response to AXIS's communications, including the invitation to plan for and participate in the mediation of the Tynes claim against the Buccaneers. Recall that for over a year and a half, AXIS and American Specialty were aware that Tynes was asserting claims against the Buccaneers and disputed whether AXIS was obliged to cover the Buccaneers. As part of the back-and-forth emails, AXIS told American Specialty that it expected American Specialty to indemnify any losses resulting from the mistake concerning employer's liability coverage.

As the district court found, the Tynes claims were within the scope of the parties' indemnification agreement. *AXIS Insurance*, 662 F. Supp. 3d at 955 n.1. AXIS managed the defense of the claims until the Buccaneers informed both insurance companies that the parties were going to attempt mediation. AXIS agreed to attend mediation and urged American Specialty to attend as well. But American Specialty did not respond and did not go to the mediation.

The only issue on appeal is whether, as the district court found, AXIS was required to provide American Specialty an explicit tender of defense. Because this requirement was not included in the parties' contract and it does not arise under Indiana common law, we conclude that AXIS was not required to tender the defense as a condition precedent to indemnification for settlements of potential liability.

American Specialty resists our conclusion that AXIS was not required to choose between tendering the defense of the Buccaneers claim against AXIS or giving up indemnification unless AXIS could show actual liability to the Buccaneers. American Specialty argues that for months AXIS had denied American Specialty the opportunity to engage in the defense at all, so without an opportunity to control defense of the Buccaneers' claim, American Specialty was essentially forced to indemnify a voluntary settlement payment.

AXIS's insistence on its contractual right to control the defense and settlement of indemnified claims did not mean it gave up its right to indemnification. American Specialty cannot be as ignorant of insurance disputes as this argument portrays it to be. As a sophisticated insurance company, American Specialty should have known to communicate any concerns it had about settling when the Buccaneers and AXIS

invited American Specialty to mediate the Tynes claims. Instead of engaging with AXIS in good faith, American Specialty stayed silent. Indiana courts are loath to reward such refusals to communicate. See *Sequa Coatings Corp.*, 796 N.E.2d at 1230 (finding that indemnitor "was estopped from asserting that it was not given the opportunity to determine whether the settlement agreement was reasonable because it never responded to [indemnitee's] letters informing it of [indemnitee's] intent to enforce the indemnity clause"); see generally *Monroe Guar. Ins. Co. v. Magwerks Corp.*, 829 N.E.2d 968, 975–76 (Ind. 2005) (recognizing that "insurers have a duty to deal in good faith with their insureds" under Indiana law).

Finally, Indiana courts treat whether a settlement payment was "fair and reasonable" as a question separate from whether procedural requirements for indemnification were followed. E.g., *Sink*, 458 N.E.2d at 297; see also *Price*, 524 F. Supp. at 367–68 (considering separately whether a settlement was fair and reasonable). The parties did not raise this issue in their motions for summary judgment, so we express no opinion on this second question as it relates to AXIS's settlement payment.

The judgment of the district court is REVERSED and this case is REMANDED for further proceedings consistent with this opinion.